E-FILED
Wednesday, 27 May, 2026 03:19:36 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| FOREST E. NORVILLE, | ) | |
| | ) | |
| Petitioner-Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cr-40038-SLD-1 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent-Plaintiff. | ) | |

ORDER

Before the Court are Petitioner-Defendant Forest E. Norville's motion under 28 U.S.C.

§ 2255, ECF No. 118, and motions for status, ECF Nos. 129 & 130. For the reasons that follow,

the § 2255 motion is DENIED and the motions for status are MOOT.

**BACKGROUND**

I.      **Pre-Trial Proceedings**

Norville was indicted on one count of possessing at least fifty grams of actual

methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

Indictment 1, ECF No. 1. The indictment arose out of an April 17, 2019, traffic stop in

Galesburg, Illinois. Police officers stopped Norville for traffic violations while he was riding a

motorized bicycle. After he was arrested, Norville was searched and officers found over fifty

grams of actual methamphetamine in his crotch area.

The Federal Public Defender was appointed to represent Norville. *See* May 31, 2019

Min. Entry. Norville moved to suppress the evidence from the traffic stop, arguing that officers

had no probable cause or reasonable suspicion to stop him. *See* Mot. Suppress 1, ECF No. 20.

The Court reviewed dash camera footage from the encounter and found that Norville violated

1

traffic code by failing to come to a complete stop at a stop sign. Nov. 18, 2019 Hr'g Tr. 12:14–20, ECF No. 25. Accordingly, the Court found that there was probable cause to arrest Norville and that officers could properly conduct a search incident to arrest. *Id.* at 12:20–23; Dec. 6, 2019 Hr'g Tr. 13:8–24, ECF No. 59. The motion to suppress was, therefore, denied. Dec. 6, 2019 Hr'g Tr. 13:25.

Subsequently, Norville retained attorney Paul Mangieri to represent him. *See* Mot. Leave Appear, ECF No. 48.

## II. Trial

The case went to a jury trial beginning on March 29, 2021. *See* Mar. 29, 2021 Min. Entry. Officer Kyle Winbigler of the Galesburg Police Department testified that on April 17, 2019, while he was on patrol duty, he conducted a traffic stop of a motorized bicycle driven by Norville. *See* Trial Tr. Vol. II 54:18–22, 57:6–58:17, ECF No. 108. Norville was arrested then searched. *Id.* at 58:17–23. Winbigler located on Norville "a cannabis hitter box, a glass . . .methamphetamine pipe, a black digital scale, 57 suspected-to-be hydrocodone pills, [and] another plastic baggie with miscellaneous pills." *Id.* at 58:24–59:3. "[E]eventually 115.5 grams of methamphetamine was located in [Norville's] crotch." *Id.* at 59:3–5. Winbigler found a "Beats by Dre pouch" that had small baggies in it in Norville's pocket. *Id.* at 103:25–104:9. Matthew Allers, an officer assigned to the Drug Enforcement Administration's task force in the Quad Cities, testified as an expert for the Government. *Id.* at 143:4–23, 145:8–22. He testified that "people who are exclusively using [methamphetamine] and not also selling it" do not "buy more than a couple grams up to an 8-ball [which is 3.5 grams] at a time for exclusive personal use." *Id.* at 160:2–14. He also testified that in his opinion, based on the amount of methamphetamine Norville possessed in conjunction with the fact that the drugs were in

2

vacuum-sealed bags and that he had empty plastic baggies and a digital scale with him, Norville possessed the methamphetamine for distribution. *Id.* at 195:23–196:8.

Norville testified in his own defense as follows. He admitted that he had possessed methamphetamine. *Id.* at 217:19–21. He had one bag of methamphetamine that he had been using; he purchased another bag before he went to work earlier that day. *Id.* at 225:20–226:15; *see also id.* at 228:14–18. The first bag would last him about one week more. *Id.* at 230:15–19. The new bag would last him for a month or a month and a half. *Id.* at 231:1–4. He did not intend to distribute the methamphetamine. *Id.* at 233:12–17. He had the digital scale because he weighed the drugs he would buy so he did not "get ripped off." *Id.* at 227:6–9. He had it with him that evening because he had been staying at someone else's house and someone was "getting into [his] stuff" there. *Id.* at 226:21–227:2. He used the pipe and hitter box to smoke methamphetamine and cannabis, respectively. *See id.* at 227:12–25. And he bought the hydrocodone pills from his uncle and used them to manage pain. *Id.* at 228:1–11.

Norville requested and the Court gave the jury an instruction on the lesser-included offense of possession of methamphetamine. *Id.* at 259:21–268:21. But the jury found him guilty of the charged offense of possession fifty grams or more of methamphetamine with intent to distribute. Verdict, ECF No. 85.

### III.    Sentencing

Probation prepared a presentence investigation report ("PSR") in advance of sentencing. PSR, ECF No. 90. The PSR listed Norville's base offense level as 30 and assessed a two-level enhancement for obstruction of justice because he testified falsely at trial. *See id.* ¶¶ 25, 31–35. But Probation also noted that Norville was a career offender under the Sentencing Guidelines, and, therefore, listed his total offense level as 37. *Id.* ¶¶ 37, 39. His criminal history category

3

would have been IV, *id.* ¶ 70, but because he was a career offender, it was VI, *id.* ¶ 71.

Accordingly, his Guidelines range for imprisonment was 360 months to life. *Id.* ¶ 139. His

conviction carried a ten-year mandatory minimum term of imprisonment. *Id.* ¶ 138; 21 U.S.C.

§ 841(b)(1)(A). The Court adopted the PSR. Sentencing Hr'g Tr. 7:6–8, ECF No. 109.

The Court noted that without the career offender classification, Norville's Guidelines

range for imprisonment would have been 168 to 210 months. *Id.* at 33:21–25. It found that the

seriousness of the offense conduct was appropriately captured by an offense level of 32. *Id.* at

36:11–37:9 (noting that this accounted for the "lies that [Norville] told on the stand during the

jury trial"). But it found that the career-offender-driven category VI more accurately captured

Norville's criminal history than the category IV that would have otherwise applied. *Id.* at 38:1–

9. So the Court used a hypothetical Guidelines range of 210 to 262 months to anchor the

sentence. *See id.* at 46:10–17. It sentenced Norville to 240 months of imprisonment to account

for the seriousness of the offense, the obstruction of justice enhancement, his "dismal

compliance in the past and the lack of any specific deterrent effect that prior sentences ha[d] had,

and [the Court's] very high concern regarding [his] extreme risk to recidivate." *Id.* at 46:20–

47:5; Judgment 1–2, ECF No. 92.

## IV. Appeal

Norville appealed. Not. Appeal, ECF No. 95. Mangieri withdrew and attorney Robert J.

Palmer was appointed to represent Norville. *See* Sept. 17, 2021 Seventh Cir. Order, ECF No.

104. The sole issue Norville raised on appeal was whether the Court "erred by failing to hold an

evidentiary hearing before denying . . . Norville's motion to suppress." *United States v. Norville*,

43 F.4th 680, 681 (7th Cir. 2022). Norville argued that the intersection he was stopped at lacked

stop lines, so "he was required to stop only 'at the point nearest the intersection roadway where

4

the driver has a view of approaching traffic.'" *Id.* at 682 (quoting 625 ILCS 5/11-1204(b)). Accordingly, he argued, an evidentiary hearing was required "to determine where in the intersection he was required to stop and whether he 'truly' ran the stop sign." *Id.* But the Seventh Circuit held that because the video showed that Norville did not stop at all at the intersection, there was no reason for an evidentiary hearing. *Id.* Norville's failure to stop gave the officers probable cause to arrest him and, as a result, to search him incident to arrest. *Id.*

### V.     2255 Motion

Norville raises two claims of ineffective assistance of counsel in his § 2255 motion. *See generally* 2255 Mot. First, he argues that he received incorrect advice about his potential penalties which led him to go to trial rather than plead guilty. *Id.* at 3. Second, he argues that he only spoke to his appellate counsel for fifteen minutes and that he told counsel to raise issues— specifically that the search incident to arrest "exceeded permis[s]ible bounds without justification" when his crotch was searched—that appellate counsel failed to raise. *See id.* at 3– 4; Reply 1–2, ECF No. 126. He also argues that his right against self-incrimination and his right to testify were violated because he was sentenced to more time because of his testimony at trial. *See* 2255 Mot. 3–4; Reply 2–3.[1] The Government argues that "Norville's claims are without merit and his motion should be denied." Resp. 1, ECF No. 124.

### DISCUSSION

### I.     Legal Standard

A prisoner in federal custody may move for the court that imposed his sentence to vacate, set aside, or correct it. 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy

---

[1] The § 2255 motion does not make clear whether the self-incrimination and illegal search arguments are issues Norville wishes his appellate counsel raised on appeal or standalone claims for relief. *See* 2255 Mot. 3–4. The reply treats the search argument as an issue that should have been raised on appeal and the self-incrimination argument as a standalone claim to relief, so the Court does as well.

5

because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. U.S. Const. amend. VI. Claims of ineffective assistance of counsel are subject to the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). This test requires a defendant to show that his counsel's performance "fell below an objective standard of reasonableness" and that he suffered prejudice as a result. *Id.* at 687–88, 692. The court applies "a strong presumption that decisions by counsel fall within a wide range of reasonable trial strategies." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotation marks omitted). The defendant "must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). To demonstrate prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

## II.    Analysis

### a.    Alleged Ineffectiveness Regarding Plea

Norville's first claim is that Mangieri gave him incorrect advice regarding his potential sentence and that this led him to go to trial rather than plead guilty. *See* 2255 Mot. 3. Norville states in his § 2255 motion that counsel "told [him] the most time [he] could get was 14 years" and that if he knew that "20 [years] was even on the table [he] would of took [sic] the plea." *Id.* In his reply, he states that "counsel failed to properly advise [him] that [he] qualified as a career offender facing up to life imprisonment" and that "[f]aced with the possibility of a life sentence, any reasonable defendant including [him] would have accepted" a plea. Reply 1. The Government argues that Mangieri's erroneous advice does not constitute deficient performance and that it did not cause Norville prejudice. Resp. 16–23.

Norville attached an affidavit from Mangieri to his motion. *See* Mangieri Aff., ECF No. 118-2. Mangieri states that in January 2021, he advised Norville that "if [Norville] was to be found guilty of the offense of possession with the intent to distribute, the actual sentencing guidelines range . . . would be a . . . range of 10 years to 12.5 years." *Id.* ¶ 4. He further states that prior to trial, the Government's counsel advised him that if Norville pleaded "guilty to the charged offense of Possession of a Controlled Substance with Intent to Distribute," the Government would recommend "the mandatory minimum sentence of 10 years." *Id.* ¶ 6. Mangieri states that he advised Norville that "based upon [his] then assessment of [the] case, as [he] understood it, that if [Norville] were to proceed to trial and loose [sic], [his] estimation of [Norville's] sentence would be 14 years." *Id.* He states that prior to Norville proceeding to trial, he did not know "that upon conviction [Norville] would qualify to be sentenced as a 'Career Offender' and that a sentencing range of 360 months to life was possible." *Id.* ¶ 9.

7

### 1. Deficient Performance

To prove deficient performance, Norville must show that Mangieri's advice was not "that of a reasonably competent defense lawyer." *Julian v. Bartley*, 495 F.3d 487, 496 (7th Cir. 2007). "A reasonably competent attorney will attempt to learn all of the facts of the case, make an estimate of the likely sentence, and communicate the result of that analysis before" advising the client on whether to plead guilty. *Id.* at 495. "The attorney need not be 100% correct in [his] prediction of the consequences of pleading guilty and of going to trial, as a mistake, in and of itself is not proof of deficient performance." *Id.*

Norville has not alleged facts which, if proven, would show that counsel provided objectively unreasonable advice. Mangieri's advice about Norville's potential sentence was certainly incorrect because it did not take into account the career offender guidelines. But "an attorney's mere inaccurate prediction of a sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim." *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999) (quotation marks omitted). Indeed, the Seventh Circuit has specifically held that a lawyer's failure to inform a defendant that he would qualify as a career offender does not, by itself, constitute deficient performance. *United States v. Barnes*, 83 F.3d 934, 939–40 (7th Cir. 1996). The relevant question is whether "the inaccurate advice resulted from the attorney's failure to undertake a good-faith analysis of all of the relevant facts and applicable legal principles." *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000). Here, Norville provides nothing to suggest that Mangieri's erroneous estimate resulted from a failure to undertake a good faith analysis. He alleges nothing but the fact of the incorrect advice. And though Mangieri states in his affidavit that he did not know that Norville would qualify as a career offender, there is nothing in the affidavit that explains whether this lack of knowledge was

8

based on a constitutionally inadequate analysis or a mere mistake.  Without any allegations or evidence to suggest that Mangieri acted unreasonably, Norville cannot establish deficient performance.

### 2.  Prejudice

Norville has not alleged facts that, if proved, would show prejudice either.  To prove prejudice for a claim that counsel's deficient performance led to rejection of a plea agreement, a § 2255 movant:

> must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

Even if Norville could have received a lesser sentence if he pleaded guilty, he has not shown a reasonable probability that he would have pleaded guilty absent Mangieri's incorrect advice regarding his sentence.  First and foremost, Norville testified at trial that he did not intend to distribute the methamphetamine he possessed.  Intent to distribute is an essential element of the crime Norville was charged with.  *See* 21 U.S.C. § 841(a)(1) (making it unlawful to "possess with intent to . . . distribute . . . a controlled substance").  Norville does not explain how to square his trial testimony that he did not intend to distribute with his apparent willingness to plead guilty, which would have required him to admit the opposite.  As courts have routinely held, "[a] defendant who maintains his innocence at all stages of criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyer." *Sanders v.*

*United States*, 341 F.3d 720, 723 (8th Cir. 2003); *Welch v. United States*, 370 F. App'x 739, 743 (7th Cir. 2010) ("[E]ven now, Welch continues to insist that he is innocent, which makes it difficult to believe his assertion that he would have accepted plea deal if Chiphe had negotiated one."); *Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005) ("Humphress's assertions of his innocence at trial and during the magistrate's evidentiary hearing lend additional support to the district court's conclusion that Humphress would not have pled guilty."); *United States v. Feyrer*, 333 F.3d 110, 120 (2d Cir. 2003) (finding that the defendant had not demonstrated a reasonable probability that he would have pleaded guilty but for his counsel's performance where the defendant did "not indicate any unequivocal willingness to plead guilty and his affidavits repeatedly assert[ed] his innocence, a position that is obviously incompatible with the suggestion that he would have readily pled guilty"); *cf. Griffin v. United States*, 330 F.3d 733, 738 (6th Cir. 2003) ("Griffin's repeated declarations of innocence do not *prove*, as the government claims, that he would not have accepted a guilty plea." (emphasis added)).

Moreover, Norville fails to provide adequate support for his assertion that he would have pleaded guilty if Mangieri had accurately advised him about his sentencing exposure. Neither his § 2255 motion nor his reply are signed under penalty of perjury, so the allegations contained therein do not justify an evidentiary hearing. *See Kafo v. United States*, 467 F.3d 1063, 1067–69 (7th Cir. 2006) (reiterating the rule that "in order for a hearing to be granted [on a § 2255 petition], the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions" and noting that if the petition itself is signed under penalty of perjury, the "allegations contained therein *become* evidence" (quotation marks omitted)). Even if made under penalty of perjury, the statements in his motion and reply would not suffice to establish a reasonable probability that

10

Norville would have pleaded guilty. "In the context of plea agreements, the prejudice prong focuses on whether the deficient information was the decisive factor in a defendant's decision to plead guilty or to proceed to trial." *Julian*, 495 F.3d at 498. Norville's statements about the advice (or lack of advice) that led him to go to trial differ between the § 2255 motion and the reply. In the § 2255 motion, he states that Mangieri told him that the most time he could get was fourteen years and that if he knew twenty years "was even on the table," he would have pleaded guilty. 2255 Mot. 3. But in the reply, Norville states that "counsel failed to properly advise [him] that [he] qualified as a career offender facing up to life imprisonment" and "[a]bsolutely had counsel correctly advised [him], [he] would have accepted the" Government's plea offer. Reply 1. As his allegations about what sentencing exposure would have led him to plead guilty have changed, the Court doubts Norville could succeed in showing that counsel's advice about his potential sentence was a decisive factor in proceeding to trial.

Furthermore, Norville's statements are undermined by the record. Mangieri's affidavit, which Norville provided as evidence to support his motion, contradicts Norville's allegation that Mangieri told him that fourteen years was the most time he could get. Mangieri states that he advised Norville that he *estimated* that Norville would receive a sentence of fourteen years if he went to trial and lost, Mangieri Aff. ¶ 6, not that he advised Norville that fourteen years was the maximum term of imprisonment. And Norville's possible sentence was up to life imprisonment regardless of whether he was considered a career offender under the Guidelines. *See* 21 U.S.C. § 841(b)(1)(A). Norville makes no allegation that he was not advised of the statutory penalties for his charge.

Mangieri's affidavit also indicates that Norville was

steadfast in his desire to: (1) maintain his ability to appeal the Court's decision denying his motion to quash his arrest and suppress evidence . . . and (2) avoid the

11

mandatory minimum sentence of 10 years imprisonment by seeking a reduction of the charge by the Government to Unlawful Possession of a Controlled Substance or asking for a lesser included offense instruction be given to the jury at trial.

Mangieri Aff. ¶ 5. The Government offered to let Norville plead guilty while preserving his ability to appeal the suppression issue. *See* Mar. 22, 2021 Hr'g Tr. 11:19–12:19, ECF No. 121. Accordingly, Mangieri's affidavit, along with the fact that Norville testified at trial that he merely possessed methamphetamine, supports the inference that Norville rejected the opportunity to plead guilty and instead proceeded to trial not because of counsel's advice about the sentencing exposure but because he wanted to take his chances to have the jury find him guilty of mere possession which would carry lesser penalties. This is further supported by Mangieri's statements at a pretrial conference that Norville "made a counter-offer to the government" related to his request for a mere possession jury instruction which the Government declined. *See id.* at 14:5–17. The implication of those statements is that Norville asked the Government to allow him to plead guilty to the lesser included offense of possession and that the Government declined.

"[A] naked declaration that but for [counsel's] erroneous advice, the defendant would have altered his choice to take a plea or go to trial" is not sufficient to prove prejudice. *Julian*, 495 F.3d at 499; *see McCleese v. United States*, 75 F.3d 1174, 1178–79 (7th Cir. 1996) (holding that a defendant's proposed testimony about his "desire to withdraw his plea" and about "his reliance upon the advice of counsel" was "self-serving testimony" insufficient to prove prejudice). Naked statements that but for Mangieri's error Norville would have pleaded guilty are all the Court is left with here. Indeed, one of Norville's statements—"Faced with the possibility of a life sentence, any reasonable defendant including me would have accepted this offer," Reply 1—is quite similar to the statement that the Seventh Circuit in *Toro v. Fairman*,

12

940 F.2d 1065, 1068 (7th Cir. 1991) (alteration in original) (quotation marks omitted), found

self-serving and insufficient to prove prejudice: "[Toro] would have to have been insane not to

accept the plea agreement for the minimum sentence."

Norville's statements that he would have pleaded guilty if not for counsel's erroneous

advice are unsigned, contradicted by the record, self-serving, and strongly undermined by his

decision to testify that he did not intend to distribute methamphetamine.  As such, he has neither

shown a need for an evidentiary hearing nor proven prejudice from his counsel's erroneous

advice.

### b.  Alleged Ineffectiveness of Appellate Counsel

Next, Norville claims that he received ineffective assistance of counsel on appeal because

he "did not get to participate whats[]oever in [his] defense at [his] appeal" other than speaking

with counsel for fifteen minutes, 2255 Mot. 3, and because counsel failed to argue on appeal that

the invasive search of his crotch exceeded constitutional bounds, *id.* at 4; Reply 1–2.[2]  The

Government argues that Norville "fail[s] to articulate a non-frivolous issue that his counsel could

have raised [on appeal]" so "there would not have been any appreciable impact on the outcome

of the appeal."  Resp. 27–28.

"The right to appellate counsel is . . . firmly established."  *Gray v. Greer*, 800 F.2d 644,

646 (7th Cir. 1986).  But the Court is not aware of, nor does Norville cite to, any case law

dictating how much contact appellate counsel must have with a criminal defendant, so the Court

focuses on Norville's more concrete claim—that appellate counsel failed to raise meritorious

---

[2] In the § 2255 motion, Norville also writes: "the [sic] claimed they had evidentiary value in fact it was 1 of 2 reason [sic] I was considered a drug dealer yet they gave the 1 phone back to my girlfriend at the scene." 2255 Mot. 4. The Court understands Norville to be arguing that there was a contradiction between a police officer testifying that Norville had two cell phones, which was indicative of his being a drug dealer, Jury Trial Tr. Vol. II 77:6–25, and giving the cell phones back to his girlfriend at the scene of the arrest, *id.* at 78:1–4. But it is not clear to which claim this relates and this argument is not mentioned in the reply, *see generally* Reply, so the Court addresses it no further.

13

issues on appeal. "[C]ounsel is not required to raise every non-frivolous issue on appeal." *Martin v. Evans*, 384 F.3d 848, 852 (7th Cir. 2004). "An appellate counsel's performance is deficient if he or she fails to argue an issue that is both obvious and clearly stronger than the issues raised." *Id.* at 851.

Norville argues that counsel should have argued on appeal that his Fourth Amendment rights were violated by an "invasive 'manipulation' of [his] crotch area by the searching officer." Reply 1; 2255 Mot. 4. This was not an argument made before this Court. In Norville's original motion to suppress, he argued that "law enforcement did not have probable cause or reasonable suspicion to stop him while he was riding a motorized bicycle" and that even if there was probable cause or reasonable suspicion to stop him, law enforcement did not "have probable cause to arrest him and the subsequent search incident to arrest [wa]s the fruit of his improper arrest." Mot. Suppress 1. The basic premise of his argument was that even if there was probable cause to believe he had committed a traffic violation like running a stop sign, he was *arrested* for not having a valid license and that arrest may not have been valid because there was no evidence that a driver's license was required to operate the kind of bicycle Norville was operating. *See id.* at 6–8; Nov. 18, 2019 Hr'g Tr. 5:20–6:5. Norville's counsel explicitly denied making any argument that if there was a valid arrest, law enforcement's search of Norville was still illegal. Nov. 18, 2019 Hr'g Tr. 13:11–14 ("The Court: I mean, you're not arguing that if this was a valid arrest that they couldn't do what they did? Mr. Mullins: No."). Norville then filed a supplemental memorandum in support of his motion to suppress which did not raise the invasiveness of the search as a ground for suppression either. *See generally* Suppl. Mot., ECF No. 26.

14

Because Norville did not raise this argument to the district court, he would have needed to show good cause for the Seventh Circuit to consider it for the first time on appeal and then the Seventh Circuit would have reviewed it for plain error only. *See United States v. Kirkland*, 567 F.3d 316, 321 (7th Cir. 2009) (noting that Federal Rule of Criminal Procedure 12(e) requires a defendant to show good cause for failing to raise a forfeited suppression claim earlier and that the appeals court reviews forfeited issues for plain error). Because of the procedural barriers to obtaining relief on this issue, the Court cannot conclude that it was clearly a stronger argument than the argument counsel did raise on appeal (that the Court erred in not holding an evidentiary hearing). Accordingly, Norville cannot establish that his appellate counsel performed deficiently.

### c. Privilege Against Self-Incrimination and Right to Testify

Lastly, Norville alleges that his privilege against self-incrimination and his right to testify were violated because he was given a longer sentence based on his trial testimony. Reply 2. In his § 2255 motion, he argued that Mangieri advised him to testify because "jurors would show compassion" but instead the Government was able to discredit him and he got a longer sentence. 2255 Mot. 4.

Norville chose to testify in his own defense at trial. He testified under oath that he wished to exercise his right to testify, that no one forced or threatened him to make that decision, that he was making the decision of his own free will, and that he discussed the consequences and benefits of testifying with Mangieri. *See* Jury Trial Tr. Vol. II 214:3–19. At sentencing, the Court applied a two-level enhancement under Sentencing Guideline § 3C1.1 for testifying falsely at trial. *See* Sentencing Hr'g Tr. 7:6–8; PSR ¶¶ 25, 35. Section 3C1.1 provides for a two-level enhancement when "the defendant willfully obstruct[s] or impede[s] . . . the administration of

15

justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S. Sent'g Guidelines Manual § 3C1.1. Application notes indicate that committing perjury constitutes obstructive conduct. *Id.* cmt. n.4(B). Norville did not challenge application of the enhancement at sentencing or on appeal.

The Fifth Amendment to the Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Constitution also protects a defendant's right to testify in his own defense. *Rock v. Arkansas*, 483 U.S. 44, 51–53 (1987) (noting that such a right is protected by the Fourteenth, Sixth, and Fifth Amendments). The bounds of Norville's claim are not quite clear. He does not contend that his decision to testify was involuntary and his statements made under oath at trial would contradict any such argument. He states that his attorney advised him to testify because the jury would show compassion, but that does not suggest that he was forced to testify. Because Norville voluntarily chose to testify at trial, he waived his right to remain silent. *See Kansas v. Cheever*, 571 U.S. 87, 94 (2013) ("[W]hen a defendant chooses to testify in a criminal case, the Fifth Amendment does not allow him to refuse to answer related questions on cross-examination."); *United States v. Gamble*, 969 F.3d 718, 724 (7th Cir. 2020) ("To invoke the privilege against self-incrimination, a defendant must have actually maintained her silence.").

Norville's main argument seems to be that "imposing additional imprisonment time based on [his] perceived truthfulness while testifying violates [his] Fifth Amendment right against self-incrimination and Sixth Amendment right to testify on [his] own behalf." Reply 2. But the Supreme Court has held that § 3C1.1, which the Court relied on to justify a higher sentence, is not unconstitutional. *See United States v. Dunnigan*, 507 U.S. 87, 96–98 (1993). To the extent Norville is arguing that § 3C1.1 was not correctly applied, such an argument is waived

16

by his failure to raise it at sentencing or on appeal.  *See McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016) ("A claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal.").

In any case, the Court did not err in finding that § 3C1.1 applied.  To apply § 3C1.1 based on a defendant's perjury, three factual predicates must be present: false testimony, materiality, and willful intent.  *United States v. Johnson*, 612 F.3d 889, 893 (7th Cir. 2010).  A simple denial of guilt "cannot serve as the basis for an obstruction-of-justice enhancement pursuant to § 3C1.1."  *United States v. Hickok*, 77 F.3d 992, 1007 (7th Cir. 1996) (quotation marks omitted); *United States v. Contreras*, 937 F.2d 1191, 1194 (7th Cir. 1991) ("[A] simple denial of guilt—as in pleading not guilty, or saying to an arresting officer, 'I didn't do anything'—cannot be the basis for an obstruction enhancement under § 3C1.1").  But here, Norville testified at trial that the methamphetamine he possessed was for his personal use, *see* Jury Trial Tr. Vol. II 226:9–15, and that he did not possess methamphetamine with intent to distribute it, *id.* at 233:15–17.  The jury found that he did.  *See* Sentencing Hr'g Tr. 27:22–24 ("[H]e chose to take the stand and testify in a manner that was rejected by the jury.").  The Court noted that it "found parts of [Norville's] testimony to be quite ludicrous and illogical" and that there was no reasonable doubt in its mind that Norville possessed the drugs "in part for [his] own personal use, but also to distribute."  *Id.* at 36:7–24.  Whether or not Norville possessed methamphetamine with intent to distribute was the ultimate question in this case, so the false testimony was clearly material.  *See United States v. Mercado*, 66 F. App'x 642, 648 (7th Cir. 2003) ("[A] criminal defendant's false testimony at trial is material when it is crucial to the question of guilt or innocence.").  And there is nothing in the record to suggest that the false statements were the result of "forgetfulness, mistake, or confusion" rather than intentionally false.  *Hickok*, 77 F.3d at 1008.

17

Increasing Norville's sentence because he perjured himself did not violate his right to testify because "[a] defendant's right to testify does not include a right to commit perjury." *Dunnigan*, 507 U.S. at 96.  This claim is without merit.

### III.    Certificate of Appealability

When a district court enters a final order adverse to a § 2255 applicant, it must issue or deny a certificate of appealability.  Rule 11(a), Rules Governing § 2255 Proceedings.  A court may grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Norville has not made a substantial showing of the denial of a constitutional right, so the Court declines to issue a certificate of appealability.

### CONCLUSION

Accordingly, Petitioner-Defendant Forest Norville's motion under 28 U.S.C. § 2255, ECF No. 118, is DENIED.  His motions for status, ECF No. 129 & 130, are MOOT in light of this ruling.  The Clerk is directed to enter judgment on the § 2255 motion.

Entered this 27th day of May, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE